Don D. Buchwald
Lily K. Francis
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
dbuchwald@kelleydrye.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

ALPHONSE TRUCCHIO, et. al.,

Defendants.

S1 11 CR. 614 (VM)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NATALIA IVANOVA'S MOTION TO SUPPRESS POST-ARREST STATEMENTS AND EVIDENCE SEIZED FROM HER HOME, AND TO COMPEL THE GOVERNMENT TO PROVIDE A BILL OF PARTICULARS LISTING THE ALLEGEDLY FRAUDULENT MARRIAGES AND HER ALLEGED CO-CONSPIRATORS AND TO PROVIDE COPIES OF RELEVANT "A" FILES**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS CONCERNING IVANOVA'S ARREST
AND THE SUBSEQUENT SEARCH OF HER HOME ..........................................1

ARGUMENT...........................................................................................................4

    ANY STATEMENTS MADE BY, OR EVIDENCE SEIZED FROM,
    DEFENDANT IVANOVA SHOULD BE SUPPRESSED BECAUSE
    SUCH STATEMENTS OR EVIDENCE WERE OBTAINED IN
    CONTRAVENTION OF DEFENDANT'S FIFTH AMENDMENT
    RIGHT TO COUNSEL, AND FOURTH AMENDMENT
    PROTECTIONS AGAINST UNREASONABLE SEARCHES AND
    SEIZURES...........................................................................................................4

    A BILL OF PARTICULARS IS NECESSARY TO BRING INTO
    FOCUS THE LENGTHY, OPEN-ENDED CONSPIRACY AND
    MARRIAGE FRAUD CHARGES CONTAINED IN COUNTS SEVEN
    AND EIGHT OF THE INDICTMENT...................................................................7

    COPIES OF THE "A" FILES OF THE RELEVANT ALIENS SHOULD
    BE TURNED OVER TO THE DEFENSE UNDER RULE 16 WITH
    SUCH REDACTIONS AND/OR SUBJECT TO SUCH PROTECTIVE
    ORDER AS MAY BE APPROPRIATE ...............................................................9

CONCLUSION .......................................................................................................9

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of Defendant Natalia Ivanova's ("Ivanova") motions to: (1) suppress any post-arrest statements made by Ivanova, and any evidence seized by United States Homeland Security Agents as a result of statements made to, or consent illegally obtained by, these agents as violative of her right to counsel as guaranteed by the 5th Amendment to the United States Constitution, as well as her right to protection against unreasonable searches and seizures as guaranteed by the 4th Amendment; (2) compel the government to produce a bill of particulars detailing a complete list of the fraudulent marriages Ivanova is alleged to have participated in, under the reasoning of *U.S. v. Bortnovsky*; (3) require the turnover to the defense under Fed. R. Crim. Proc. 16 of relevant "A" Files; and (4) grant such additional relief as the Court deems just and proper under the circumstances. Submitted in support of the instant motions are the Declarations of Defendant Ivanova, dated July 12, 2013 ("Ivanova Dec.") and defense counsel Don Buchwald, dated July 17, 2013 ("Buchwald Dec."), respectively.

## STATEMENT OF FACTS CONCERNING IVANOVA'S ARREST AND THE SUBSEQUENT SEARCH OF HER HOME

The facts set forth in the Declaration of Defendant Natalia Ivanova are incorporated here by reference. Briefly stated, the facts are as follows:

At approximately 6:40 am, on the morning of November 30, 2011, Ivanova was awakened by a number of individuals ringing her doorbell. (Ivanova Dec. at ¶ 3.) She went to answer the door wearing only a nightgown and small robe. (*Id.* at ¶ 4.) Upon opening the door, the individuals outside identified themselves to Ivanova as law enforcement officers. (*Id.*) There were six to eight of them in total. (*Id.*) It was explained to Ivanova that a warrant had been

issued for her arrest for her role in "fake marriages." (*Id.* at ¶ 5.) When the officers attempted to enter her home, Ivanova asked that only one of the agents come in, as she did not want to disturb her young son, who was sleeping at the time. (*Id.* at ¶ 6.) The agents replied that all of them had to enter the home at once. (*Id.*) She let them in. (*Id.*) The agents were wearing bullet-proof vests. (*Id.* at ¶ 7.) They had guns holstered at their waists. (*Id.*) A number of them kept their hands on the grips of their weapons as they entered. (*Id.*)

As soon as the agents entered her home, Ivanova asked if she could call her attorney. (*Id.* at ¶ 8.) One of the agents responded that she could not (*Id.*)

Ivanova was then allowed to dress, and was accompanied into her bedroom by the female agent to do so. (*Id.* at ¶ 9.) Her then 6-year old son was still asleep in their shared bedroom at that time. (*Id.*)

When Ivanova returned to the living room, a number of the agents were looking through various drawers and cabinets throughout the apartment. (*Id.* at ¶ 10.) She sat down with a few of the agents in the living room, and the agents asked her if anyone else was home besides herself and her son. (*Id.* at ¶ 11.) She answered that there was not. (*Id.*)

One of the agents then asked Ivanova if she knew anything regarding "marriages." (*Id.* at ¶ 12.) She answered that she did. (*Id.*) The agent then asked her if she had anything regarding marriages that she wanted to give them voluntarily. (*Id.*) She then brought the agents six files pertaining to individuals whom she had assisted with immigration paperwork. (*Id.*) The agents took these files. (*Id.*)

The agents asked Ivanova if she had any drugs or weapons in her home, and she answered that she did not. (*Id.* at ¶ 13.)

Around that time, the agents provided Ivanova with a "statement of rights" form for her to sign. (*Id.* at ¶ 14, Exhibit A.) She later learned that this form constituted a waiver of

her Miranda rights. (*Id.* at ¶ 14.) This form was presented to her after she had made an unequivocal request to speak with her attorney. (*Id.*) Although the form notes "6:30 am" as the time that Ivanova allegedly signed it, this is inaccurate. (*Id.*) She did not sign the form as soon as the agents entered her home. (*Id.*) This time was not filled in when she signed the form. (*Id.*) She believes it was signed closer to 7:00 or 7:15 am. (*Id.*)

At another point during the morning, the agents presented Ivanova with forms to search her apartment. (*Id.* at ¶ 15, Exhs. B. and C.) One form, entitled "Consent to Search," did not contain a time indicating when it was signed. (*Id.* at ¶ 15, Exh. B.) Another form, entitled "Consent to Search Premises," contains the handwritten time entry of "6:40 am." (*Id.* at ¶ 15, Exh. C.) Although it reflects a time of "6:40 am" for Ivanova's signature, this time was not filled in when she actually signed the document, and is inaccurate. (*Id.*) It was in fact signed later in the morning. (*Id.* at ¶ 15.)

Ivanova then went into her bedroom to wake her son. (*Id.* at ¶ 16.) At that time, the agents entered her bedroom and began to search it. (*Id.*) At that time, they seized and opened a number of sealed envelopes. (*Id.*) As the agents searched her bedroom, Ivanova again asked if she could call her attorney. (*Id.* at ¶ 17.) She was again told that she could not. (*Id.*)

Ivanova signed yet another consent form at some point while her agents were searching her bedroom. (*Id.* at ¶ 18, Exh. D.) This contains a "09:30" time. (*Id.*) The computers, thumb drives, and cellular phones referenced on that form have not been returned to Ivanova at any point in the last 18 months (though a difficult to access replica of the computer hard drives were given to her attorney approximately two months ago). (*Id.*)

The defense maintains that all of the items seized from her apartment, listed in Exhibit E to her Declaration, require suppression as they were obtained in violation of her 4th, 5th, and 6th Amendment rights. (*Id.* at ¶ 19, Exh. E.)

## ARGUMENT

I.    **ANY STATEMENTS MADE BY, OR EVIDENCE SEIZED FROM, DEFENDANT IVANOVA SHOULD BE SUPPRESSED BECAUSE SUCH STATEMENTS OR EVIDENCE WERE OBTAINED IN CONTRAVENTION OF DEFENDANT'S FIFTH AMENDMENT RIGHT TO COUNSEL, AND FOURTH AMENDMENT PROTECTIONS AGAINST UNREASONABLE SEARCHES AND SEIZURES**

Any statements made by Ivanova following her arrest on November 30, 2011, and any evidence seized by Homeland Security Agents following this arrest, were obtained in violation of her right to an attorney under *Miranda v. Arizona*, 384 U.S. 436 (1966). Accordingly, these statements and evidence must be suppressed.

The Supreme Court's opinion in *Edwards v. Arizona*, 451 U.S. 477 (1981) is controlling on this issue. According to the Court in *Edwards,* once an accused has invoked his or her *Miranda* right to counsel during the course of a custodial interrogation, any and all police questioning must cease until the accused is provided with counsel, unless the accused herself reinitiates further communication with the police:

> ...the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused...having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id.* at 484-85. Thus, a request for counsel made by an indicted suspect effectively terminates an officer's ability to question this suspect unless the suspect herself re-engages the officer. Further, this essential right cannot be cast aside lightly – once invoked, the Fifth and Sixth Amendment rights to counsel cannot be waived unless it is done so voluntarily, knowingly,

and intelligently. *Id.* at 484.  In *Edwards*, the Court held that the fact that the suspect confessed after being read his *Miranda* rights did not demonstrate that he understood his right to counsel, or that he knowingly waived it. *Id.* at 486-87.

The Supreme Court's opinion in *Rhode Island v. Innis* further circumscribes what – if anything – police may speak with a suspect about after she has invoked her right to counsel. In his majority opinion, Justice Stewart held that,

> …the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.  That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police…that the police should know are reasonably likely to elicit an incriminating response.

446 U.S. 291, 300-01 (1980).  Thus, the term "interrogation" has some elasticity to it under Supreme Court law.  It refers not only to direct questioning of the subject on matters of suspicion, but any questioning that an officer might think would be reasonably likely to lead the suspect to make an incriminating statement.

In light of this controlling case law, it is clear that the agents who arrested Ivanova flagrantly violated her Fifth and Sixth Amendment right to counsel.  Any statements or evidence obtained as a result of this violation must be regarded as fruit of the poisonous tree subject to suppression. *See Wong Sun v. United States*, 371 U.S. 471 (1963).  The moment that these agents set foot in Ivanonva's home, she asked for permission to call an attorney.  (Ivanova Dec. at ¶ 7.)  This constituted a clear invocation of her right to counsel,[1] and should have triggered an immediate cessation to all questioning as required by *Edwards*.  Yet the agents continued to question Ivanova – after denying her the exercise of her constitutional right to an

---

[1] As per the standard set out by the Supreme Court in *Davis v. United States*, Ivanova's request to call her attorney was neither ambiguous nor equivocal, and thus constituted an effective invocation of her Fifth Amendment right to counsel. *See* 512 U.S. 452 (1994).

attorney – asking her specifically whether or not she had evidence in her home pertaining to a particular subject: marriages.  (Ivanova Dec. at ¶ 11.)

Such questioning was clearly impermissible under both *Edwards* and *Innis*. Ivanova never re-engaged the agents in their questioning, and therefore the agents were not permitted to ask Ivanova anything further under *Edwards* once she'd asked for an attorney. Furthermore, the agents should have recognized that any affirmative response on Ivanova's part to the question "do you have anything here related to marriages?" would have led her to make a potentially incriminating statement.  The answer the agents surely sought – something along the lines of, "yes, I do," – would have inherently been incriminating.  Ultimately, not only did Ivanova provide a potentially incriminating verbal answer to the agents' questions, but she directed them to potentially incriminating documentary evidence that was subsequently seized as well. (Ivanova Dec. at ¶ 11.)  As such, the agents' questioning must be viewed as violative of *Innis*.  The agents would never have come across such files had they not continued to question her impermissibly after she requested an attorney, irrevocably tainting these files.  The fact that Ivanova was later advised of her rights and signed various waiver forms consenting to questioning and searches is unavailing, so long as she did not voluntarily reinitiate the questioning after invoking her right to counsel.  *Edwards,* 451 U.S. at 484-85.

It is clear that the agents' questioning in this vein occurred after Ivanova invoked her right to an attorney, and further that such questioning was intended to elicit an incriminating statement from her.  Thus, the questioning constituted a blatant Fifth Amendment violation under both *Edwards* and *Innis*.  As such, anything that Ivanova said, or provided, to these agents following the invocation of her right to counsel requires suppression.

## II.   A BILL OF PARTICULARS IS NECESSARY TO BRING INTO FOCUS THE LENGTHY, OPEN-ENDED CONSPIRACY AND MARRIAGE FRAUD CHARGES CONTAINED IN COUNTS SEVEN AND EIGHT OF THE INDICTMENT

Under Rule 7(f) of the Federal Rules of Criminal Procedure, a defendant may seek a bill of particulars "in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2nd Cir. 1987); *See also, United States v. Rigas*, 490 F. 3d 208, 237 (2d Cir. 2009). The decision of whether or not to grant a bill of particulars rests within the discretion of the trial court. *Id.* at 574.

A court should grant a defendant's request for a bill of particulars where, as in the instant case, the essential information sought by the defendant is not provided in the indictment. In particular, Counts Seven and Eight of the indictment allege that certain named defendants including Ivanova and "others known and unknown" conspired to violate stated sections of the United States Code, thereby committing numerous immigration-based offenses. Count Eight of the indictment alleges marriage fraud conspiracy without identifying by name the individuals whose marriages are alleged to be fraudulent. Furthermore, by alluding to individuals whose names are not provided in the indictment, the government has failed to state with particularity the identities of those not named as defendants in Counts Seven and Eight with whom Ivanova allegedly conspired to commit these crimes.

The government may assert that Ivanova is not entitled to a bill of particulars because the information sought by her has already been provided during discovery. This argument fails.

First, under *Bortnovsky*, a defendant is entitled to seek a bill of particulars *even if* the government has provided extensive discovery on the matter. *See* 820 F.2d 572. In that case, the Second Circuit determined that the district court had abused its discretion in refusing to order a bill of particulars even though the government had provided over 4,000 documents to defense counsel during discovery. *See* 820 F.2d at 574-75. The Court noted that "[t]he Government did not fulfill its obligation merely providing mountains of documents to defense counsel...." *Id.* at 575. Overwhelming a defendant with discovery can obscure the particulars of a charge just as effectively as denying discovery. This is particularly true in a case such as this one, where the government alleges a conspiracy spanning four years, involving at least nineteen co-conspirators, in which the government's disclosures include hundreds of transcripts of recorded telephone calls in both English and Russian. As in *Bortnovsky*, simply heaping discovery upon Ivanova may ultimately hinder the preparation of her defense. Only by obtaining a bill of particulars setting forth the names of persons alleged to be her co-conspirators, and the names of persons whose marriages are alleged to be fraudulent, will Ivanova be able to marshal meaningful evidence and construct an effective defense.

Second, the Government has not purported to provide counsel with an exhaustive list of allegedly fraudulent marriages and the alleged participants in the marriages. What the Government has provided in response to defense counsel's request is a list containing 16 items annexed as Exhibit F to the Buchwald Declaration. (Buchwald Dec. at ¶2.) If there are other fraudulent marriages the Government intends to claim and/or prove we should be given meaningful and adequate notice of same. Only then will the dictates of *Bortnovsky, supra* (enabling of trial preparation, prevention of surprise, assessment of double jeopardy claims in subsequent prosecutions) be met. Even the very basic assessment of whether or not to proceed to trial can be impacted where, as here, sentencing guidelines are so substantially determined by the

number of fraudulent marriages involved. *See* U.S.S.G. § 2L2.1(b)(2) and Application Note 2 thereto.

III.   **COPIES OF THE "A" FILES OF THE RELEVANT ALIENS SHOULD BE TURNED OVER TO THE DEFENSE UNDER RULE 16 WITH SUCH REDACTIONS AND/OR SUBJECT TO SUCH PROTECTIVE ORDER AS MAY BE APPROPRIATE**

Rule 16(e) of the Federal Rules of Criminal Procedure requires that upon defense request the Government must make available for copying and inspection items "material to preparing the defense" that are within "the government's possession, custody or control." The Government alleges that Ivanova facilitated phony marriages between aliens and U.S. citizens in order to effectuate changes in the immigration status of the aliens to permit the aliens to remain in the United States. The defense has requested copies of the "A" Files [i.e., immigration files] of those aliens in order to help defendant identify the allegedly fraudulent marriages and to enable the defense to assess and/or refute the "fraudulent" nature of the marriages. (Buchwald Dec. at ¶3.) Access to the "A" Files is clearly necessary for the defense . The Government has heretofore declined to furnish copies of the "A" Files to the defense on the grounds that the "A" Files contain personal information and that ICE objects to their disclosure. Any such objections can be overcome by such redactions and turnover pursuant to such protective orders as the Court deems appropriate. ( *Id.*)

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant Ivanova's motions to (1) suppress any post-arrest statements made by Ivanova, and any evidence seized by United States Homeland Security Agents as a result of statements made to, or consent wrongfully obtained by, these agents as violative of her right to counsel as guaranteed by the 5th and 6th Amendments to the United States Constitution, as well as her right to protection against

unreasonable searches and seizures as guaranteed by the 4th Amendment; (2) compel the government to produce a bill of particulars detailing a complete list of the fraudulent marriages Ivanova allegedly facilitated, as well as a list of "known" co-conspirators; (3) require the turnover under Rule 16(e) of relevant "A" Files; and (4) grant such additional relief as the Court deems just and proper under the circumstances.

Dated:  New York, New York
          July 19, 2013

                                     Respectfully Submitted,

                                       Don D. Buchwald (Bar No. 2214)
                                       Kelley Drye & Warren, LLP
                                       101 Park Avenue
                                       New York, NY 10178
                                       Telephone: (212) 808-7800
                                       Facsimile: (212) 808-7897

                                       Attorneys for Defendant
                                       Natalia Ivanova