UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALPHONSE TRUCCHIO, et. al.,<br><br>Defendants. | S1 11 CR. 614 (VM)<br><br>**DECLARATION OF NATALIA IVANOVA IN SUPPORT OF MOTION TO SUPPRESS POST-ARREST STATEMENTS AND EVIDENCE SEIZED BY GOVERNMENT** |

I, NATALIA IVANOVA, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am a 45 year old female, lawfully resident in the United States and a citizen of Russia. I live alone with my 8-year old son who was born here.

2. I make this Declaration to explain the circumstances of my arrest on November 30, 2011, in connection with the above proceeding.

3. To the best of my belief and recollection, at approximately 6:40 am, on the morning of November 30, 2011, I was awakened by individuals ringing my doorbell.

4. I went to answer the door wearing a nightgown and small blue robe. When I opened the door, the individuals outside identified themselves as law enforcement agents. There were between six and eight of them in total.

5. The agents explained to me that they had a warrant for my arrest, based on my role in "fake marriages."

6. I asked the agents if I could get dressed. One of them answered that I could, but that they would have to enter my home first. I asked if only the female agent could enter, as my young son was still asleep, and was told that all of the agents had to come in at once. I let them in, and they walked into my living room.

7. The agents were wearing bullet-proof vests. They had guns holstered at their waists. A number of them kept their hands on the grips of their weapons as they entered.

8. As soon as they entered, I asked if I could call my attorney. One of the agents promptly responded in words or substance that I could not make any phone calls for now.

9. I was allowed to dress, being accompanied by a female agent into the bedroom that I shared with my son. I dressed myself. My son was still sleeping during this time.

10. When I returned to the living room, a number of the agents were already sweeping the apartment, looking through various drawers and cabinets.

11. I sat down with the agents in my living room. They asked me if anyone else was in my home beyond myself and my son, and I answered that there was not.

12. One of the agents asked me if I knew anything regarding "marriages." I told them that I did. He asked me if I had anything regarding marriages that I wanted to give them voluntarily. I then brought the agents six files pertaining to individuals whom I had assisted with immigration paperwork. The agents took these files.

13. The agents asked me if I had any drugs or weapons in my home, and I answered that I did not.

14. Around that time, I was given a "statement of rights" form to sign (annexed hereto as Exhibit A). I now understand that this form constituted a waiver of my Miranda rights. However, this form was only presented to me after I had made my unequivocal

request to speak to a lawyer as soon as the agents entered my apartment -- a request that the agents denied. The "6:30 am" time noted on the form that allegedly reflects the time I signed the document is inaccurate, as I certainly did not sign it immediately upon the agents' arrival. This time was not filled in at the time I signed the document. I believe that I signed this form closer to 7:00 or 7:15 am.

15. I was also presented with forms to search my apartment, which I signed. Exhibit B, annexed hereto, entitled "Consent to Search," does not contain a time. Exhibit C, also annexed hereto, entitled "Consent to Search Premises," contains the handwritten time entry of "6:40 am." The 6:40 am time noted on the form (Exh. C) that allegedly reflects the time I signed the document is inaccurate and was not filled in at the time I signed the document. The form was signed later in the morning.

16. I then went into my bedroom to wake up my son. At that point, the agents began to search my bedroom. In my bedroom, the agents seized and opened a number of sealed envelopes.

17. As the agents searched my bedroom, I again asked if I could call my attorney. Once again, I was told that I could not.

18. Another consent form (annexed hereto as Exhibit D), which I signed at some point while the agents were searching my bedroom, contains a "09:30" time. The computers, thumb drives, and cellular phones referenced therein have never been returned to me despite my attorneys' repeated requests for them. I certainly did not understand when I signed this document that I would be deprived of access to these items for the next 17 months.

19. Exhibit E, which is annexed hereto, is a list of items seized from my apartment by the agents on November 30, 2011, which has been furnished to my attorneys in

discovery. Upon advice of counsel, I believe each item therein should be suppressed as obtained in violation of my Fourth, Fifth and Sixth Amendment rights.

Dated: New York, New York
July 12, 2013

_____
NATALIA IVANOVA